**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HECTOR S. ALVAREZ,

          Petitioner,

v.

PATRICK A. NOGAN, et al.,

          Respondents.

Civil Action No. 14-1397 (CCC)

**OPINION**

**CECCHI, District Judge.**

*Pro se* Petitioner Hector S. Alvarez, a convicted individual who has now been released from custody, files the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a conviction by the State of New Jersey for conspiracy to commit a robbery and attempted theft. Petitioner has declared that this Petition sets forth all grounds for relief and is his one, all-inclusive habeas petition. (ECF No. 7.) Respondents have filed a Response, (*see* ECF Nos. 13 & 14), and Petitioner did not file a reply. For the reasons stated below, the Court denies the Petition.

### I.    FACTUAL BACKGROUND

For the purposes of this Opinion, the Court recites only relevant facts, and relies on the findings of fact made by the state appellate court on Petitioner's direct appeal in *State v. Alvarez*, No. A-3332-10T2, slip op. 2-8 (N.J. Sup. Ct. App. Div. Dec. 21, 2012), ECF No. 13-4, unless otherwise cited. On May 18, 2007, Petitioner, a New York City police officer at the time of the offense, accompanied by co-conspirator Miguel Castillo, a fellow officer, arrived in Rutherford, New Jersey at a two-family dwelling, intending to rob an alleged money launderer and drug dealer.

When they knocked on the door, the victim answered, at which point they identified themselves as police officers, and attempted to gain entry into the premises. The victim, recognizing something was amiss, refused their entry. A scuffle ensued, which alerted the victim's downstairs neighbor and landlord. A brief conversation occurred between the conspirators and the landlord, during which the conspirators realized that their scheme had failed, and they quickly fled the scene, although not before the landlord was able to identify the license plate number of their vehicle.

The landlord notified the Rutherford Police Department ("RPD") of the incident, and relayed to the RPD a description of the vehicle and the license plate number. RPD was able to apprehend the conspirators and brought them back to the police station. At this point, they were not formally charged nor formally placed under arrest. Petitioner was allowed to keep his cellphone, which he used to place numerous calls while at the station, and was at one point informed that he was not under arrest and was free to leave.

Concurrently, RPD conducted an investigation of the incident. It contacted the New York Police Department ("NYPD"), and was eventually told that the conspirators were not on official police business. RPD decided to interview Petitioner. Before the interview began, he was given his *Miranda* rights, which he then waived. However, during the middle of the interview, he asked a RPD officer "LT, is a PB . . . PBA lawyer here?" He was given a negative response. Later, without re-administration of a *Miranda* warning, he confessed that he, Castillo, and another individual, Victor F. Sandoval, had conspired to rob the victim. Sandoval was the recipient of several calls that Petitioner had placed while at the station, and in part due to Petitioner's advanced warning, he was able to evade capture—Sandoval was still a fugitive at the time of Petitioner's trial. Petitioner and Castillo were then formally arrested and charged, and NYPD gave them the option of resignation instead of being fired, which they accepted.

At trial, the state introduced as evidence against Petitioner, among other things, (1) a video of Petitioner's confession, (2) testimony of the victim, (3) testimony of Castillo,[1] (4) Sandoval's fugitive status, and (5) his resignation from the NYPD, all of which the trial court allowed. The jury eventually acquitted Petitioner of first-degree robbery, second-degree armed burglary, second-degree unlawful possession of a firearm, second-degree unlawful use of a body vest, and fourth-degree impersonating a law enforcement officer. He was convicted of second-degree conspiracy to commit robbery, and fourth-degree attempted theft.

Petitioner appealed. The conviction and sentence were affirmed by the appellate court, and certification was denied by the New Jersey Supreme Court. (ECF No. 1 at 3-4.) The United States Supreme Court also denied certiorari. (*Id.* at 5.) Petitioner did not seek post-conviction relief in state court. (*Id.*) The instant Petition followed. The Court issued a notice pursuant to *Mason v. Meyer*, 208 F.3d 414 (3d Cir. 2000), notifying Petitioner that he must raise all of his claims challenging the conviction in the instant Petition and, absent extraordinary circumstances, will not be allowed to file a second habeas petition in the future. (ECF No. 6.) Petitioner elected to proceed with the Petition as filed. (ECF No. 7.)

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ for habeas

---

[1] Castillo had entered into a plea agreement wherein he agreed to testify against Petitioner.

3

corpus shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

## III. DISCUSSION

In the instant Petition, Petitioner raises five grounds for relief: (1) admission of his confession at trial was in error because it was obtained in violation of his *Miranda* rights; (2) admission of Sandoval's fugitive status was in error because it was irrelevant and unduly prejudicial; (3) admission of his and Castillo's resignations was irrelevant and unduly prejudicial; (4) admission of his "mug shot" at trial was unnecessary and unduly prejudicial; (5) prosecutor committed misconduct by comparing his crime with sexual assault in the context of explaining the burglary charge to the jury.

### A. Ground One – Miranda Violation

Petitioner argues that his confession—which occurred after he "unambiguously requested to speak to his PBA attorney again"—was in violation of his *Miranda* rights, because he was not given another *Miranda* warning after asserting his right to counsel, rendering his confession inadmissible. In denying this claim, the state appellate court held that (1) Petitioner's inquiry did not constitute the assertion of his right to counsel, (ECF No. 13-4 at 13), and (2) even if the confession was inadmissible, its admission was harmless error, (*id.* at 14). The Court finds that the appellate court's decision was a reasonable application of established federal law, based on a reasonable determination of the facts.

In *Miranda v. Arizona*, the Supreme Court held that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. 436, 444 (1966). This required warning by a prosecuting authority is now known as the *Miranda* warning. "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.*

> If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

*Id.* at 444-45. "[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.* at 479.

In that regard, the Supreme Court held that "a suspect who has 'invoked his right to have counsel present . . . is not subject to further interrogation by the authorities until counsel has been made available to him, unless [he] initiates further communication, exchanges, or conversations with the police.'" *Berghuis v. Thompkins*, 560 U.S. 370, 405 (2010) (quoting *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010)). However, "[a]fter a suspect has knowingly and voluntarily waived his *Miranda* rights . . . police may continue questioning 'until and unless the suspect clearly requests an attorney.'" *Id.* at 406 (quoting *Davis v. United States*, 512 U.S. 452, 461 (1994)). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459. "[W]e are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect *might* want a lawyer. Unless the suspect actually requests an attorney, questioning may continue." *Id.* at 462 (emphasis in the original).

Here, the appellate court makes two critical findings of fact, neither of which Petitioner disputes in the Petition. First, the appellate court found that Petitioner was initially given a *Miranda* warning before the start of the interview, and he affirmatively waived his rights. (ECF No. 13-4 at 6.) Second, the appellate court found that the statement in dispute regarding

6

Petitioner's assertion of his right to counsel was "his question about the whereabouts of a PBA lawyer," (*id.* at 13), a clear reference to Petitioner's statement as recited above—"LT, is a PB . . . PBA lawyer here?" Indeed, Petitioner himself argues, in support of the instant Petition, that

> [d]uring a break in the interrogation, the petitioner specifically asked an unidentified police lieutenant whether his attorney had arrived, to which he received a negative response. Whether, or not, the petitioner's inquiry into the presence of his PBA attorney was communicated to the investigating officers, the question triggered the petitioner's Miranda privilege, and mandated that all questioning cease until the attorney was present.

(ECF No. 8 at 25.) As such, there is no dispute as to the appellate court's factual findings.

As to the merits of Petitioner's claim, the appellate court did not apply *Davis*'s clear-statement standard. Rather, it applied its own state law, that "a suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel." (ECF No. 13-4 at 11 (quoting *State v. Reed*, 133 N.J. 237, 253 (1993)).) It further opined that "'an equivocal request for an attorney is to be interpreted in a light most favorable to the defendant,' and that where a defendant makes an equivocal request for counsel, 'questioning should cease and the police should inquire of the suspect about the correct interpretation of the statement.'" (*Id.* at 12 (quoting *State v. Chew*, 150 N.J. 30, 63 (1997)).) However, despite adopting this less-stringent standard, it nevertheless held that:

> Alvarez's circumstances belie his claim that his question about the whereabouts of a PBA lawyer amounted to even an equivocal request for counsel. As a police officer versed in *Miranda* warnings, Alvarez never cut short the interview, stood mute, or otherwise manifested an interest in either speaking to an attorney or waiting for one to arrive. His curiosity about a PBA attorney neither triggered a need for clarification nor mandated a breather until new *Miranda* warnings could be administered.

(*Id.* at 13.)

The Court cannot find that the appellate court's decision was an unreasonable application of established federal law. As the above case law makes clear, New Jersey has a much less onerous

standard in determining whether a suspect has invoked his right to counsel—where as in New Jersey, a suspect's ambiguous assertion must be interpreted in a light most favorable to him, under *Davis*, a suspect is only afforded the protection of what a reasonable officer in light of the circumstances would have understood. Yet even under this more generous standard, the appellate court still held that Petitioner's statement did not amount to an equivocal assertion of his right to counsel, much less a *clear* assertion as required by *Davis*. As the Supreme Court explained, "a statement either is such an assertion of the right to counsel or it is not." *Davis*, 512 U.S. at 459 (quoting *Smith v. Illinois*, 469 U.S. 91, 97-98 (1984)). Under federal law, a question as to the whereabouts of one's lawyer is not a clear assertion of one's right to counsel. *Cf. Davis*, 512 U.S. at 452 ("Maybe I should talk to a lawyer" too ambiguous to invoke right to counsel); *United States v. Whiteford*, 676 F.3d 348, 362 (3d Cir. 2012) (Defendant's statement that his attorney directed him to cooperate unless he "got stumped" was not an invocation of right to counsel); *Flamer v. State of Delaware*, 68 F.3d 710, 725 (3d Cir. 1995) (Defendant's request to call his mother "to inquire about . . . possible representation" was not an invocation of right to counsel); *United States v. Pelle*, No. 05-0407, 2006 WL 2528552, at *8 (D.N.J. Aug. 31, 2006) (Defendant's statement "I don't want to sign anything right now. I think you people should leave until I consult with my attorney" was not a clear invocation of the right to counsel). Accordingly, the Court finds the state court's decision to be a reasonable application of *Davis*, based on a reasonable determination of the facts. Relief on this ground is denied.

### B. Grounds Two Through Five – Procedural Default

Respondents assert that Petitioner has procedurally defaulted on Grounds Two through Five, because he failed to raise those claims with the New Jersey Supreme Court. The Court agrees. Federal statute requires a petitioner to exhaust state court remedies before he can raise a

claim on federal habeas, and the Court cannot grant habeas relief if a claim has not been exhausted in state court. 28 U.S.C. § 2254(b) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.") The exhaustion requirement gives the state courts "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Collins v. Sec'y of Pa. Dep't. of Corr.*, 742 F.3d 528, 542 (3d. Cir. 2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). A state prisoner must exhaust the remedies available in state courts before bringing his federal habeas petition, unless "there is an absence of available state corrective process[] or . . . circumstances exist that render such process ineffective." 28 U.S.C. § 2254(b)(1)(B).

A claim is exhausted in state court only when the petitioner has presented the claim at each level of state court empowered to hear such claim, either on direct appeal or in post-conviction proceedings. *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *Robinson v. Beard*, 762 F.3d 316, 328 (3d Cir. 2014). When a claim has not been exhausted, ordinarily the Court is duty-bound to return the petitioner back to state court to present his unexhausted claims. *Rhines v. Webber* 544 U.S. 269, 274 (2005). However, if state procedural rules prevent the petitioner from presenting such claim upon return, then the claim is procedurally defaulted. *Id.* (citing *Jimenez v. Walker*, 458 F.3d 130, 149 (2nd Cir. 2006)). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "We therefore require a prisoner to demonstrate cause for his state-court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." *Id.*

Procedural default may be excused and a federal habeas court may address the claim if the petitioner shows cause and prejudice for the default or that a fundamental miscarriage of justice will occur if the claim is not addressed. *Collins*, 742 F.3d at 542, n.8 (citing *Jimenez*, 458 F.3d at 149) (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)). "The existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. The prejudice required to excuse procedural default is more than the possibility of prejudice, but that the trial errors "worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *Albrecht v. Horn*, 485 F.3d 103, 124, n.7 (3d Cir. 2007) (quoting *Murray*, 477 U.S. at 494)).

Procedural default may also be excused if a "fundamental miscarriage of justice" will occur if the habeas court does not address the merits of the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "To establish a miscarriage of justice excusing a procedural default a habeas petitioner must 'persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Thus, "[a]n allegation of 'actual innocence' if credible, is one such 'miscarriage of justice' that enables courts to hear the merits" of otherwise procedurally defaulted habeas claims. *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004).

Here, it is clear that Petitioner did not exhaust Grounds Two through Five of the Petition. Petitioner's appellate counsel raised, and the Appellate Division explicitly addressed, Grounds One, Two, and Three on direct appeal. (*See* ECF No. 13-1 at 2-3; ECF No. 13-4 at 9-18.) Petitioner also filed a *pro se* brief on appeal, in which he asserted Ground Four. (*See* ECF No. 13-

3 at 10.) However, neither counsel's brief nor Petitioner's *pro se* brief raised Ground Five on appeal. Moreover, on petition for certification with the New Jersey Supreme Court, the only argument raised in counsel's brief was Ground One, (*see* ECF No. 13-5 at 2), and Petitioner submits no evidence that he had filed a *pro se* brief that raised any other grounds. As such, he did not present Grounds Two through Five at each level of state court—indeed, he did not raise Ground Five at all in state court.

Furthermore, a return to state court would be futile. It is too late to raise these claims on direct appeal, and while New Jersey has a post-conviction relief ("PCR") process, state rule prohibits a petitioner from raising on PCR any claim that could have been raised on direct appeal. N.J. Ct. R. 3:22-4(a) ("Any ground for relief not raised in the proceedings resulting in the conviction . . . or in any appeal taken in any such proceedings is barred from assertion [on PCR review]."); *State v. McQuaid*, 147 N.J. 464, 483 (1997) ("A defendant ordinarily must pursue relief by direct appeal, [] and may not use post-conviction relief to assert a new claim that could have been raised on direct appeal."). Even if Petitioner could theoretically raise these claims on PCR, he is now time-barred from filing a PCR application—judgment was entered against him by the trial court on May 14, 2010, (ECF No. 1 at 2), and under state law, a PCR application must be filed within five years after the trial court has rendered judgment. N.J. Ct. R. 3:22-12(a)(1). Therefore, Grounds Two through Five are procedurally defaulted.

As stated above, Petitioner may overcome procedural default by presenting evidence of good cause and prejudice, or by showing that a "fundamental miscarriage of justice" will occur if the Court does not address the merits of the claim. However, Petitioner did not file a reply, and he has not presented any argument to rebut Respondents' assertion of the procedural default

defense. Accordingly, the Court finds that Grounds Two through Five of the Petition are procedurally defaulted, and relief on these grounds is denied.

### C. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### IV. CONCLUSION

For the reasons set forth above, the Petition is DENIED, and the Court DENIES a certificate of appealability.

Dated: Feb 7, 2017

Claire C. Cecchi, U.S.D.J.